**F.P. CORP., Plaintiff,**

v.

**GOLDEN WEST FOODS, INC., Defendant.**

**Civ. A. No. 91–0040–L.**

United States District Court,
W.D. Virginia,
Lynchburg Division.

July 28, 1992.

Joseph L. Steinfeld, Jr., Sims, Walker & Steinfeld, P.C., Washington, D.C., for plaintiff.

Stephen R. Mysliwiec, Mary E. Brobson, and James D. Gette, Piper & Marbury, Washington, D.C., pro hac vice, for defendant.

## MEMORANDUM OPINION

KISER, District Judge.

This is an action by a motor carrier, F.P. Corp. ("FP"), against a shipper, Golden West Foods, Inc. ("Golden West"), to recover the difference between FP's tariff rate and a negotiated rate between the parties, commonly known as an undercharge action. Golden West has moved to stay this case and refer it to the Interstate Commerce Commission ("ICC"). Because this case does not involve issues requiring the ICC's expertise, I will deny the motion. Regarding the merits, as I find that FP did not have a valid tariff on file at the time it made shipments for Golden West, I will grant Golden West's motion for summary judgment and deny FP's motion for summary judgment.

*The Motion to Stay and Refer to the ICC*

■ Golden West contends that this case raises two issues that are within the special competence of the ICC and should be referred to it under the doctrine of primary jurisdiction: the determination if a carrier conducted business as a contract or common carrier, and the determination if a tariff was duly filed and adopted by the carrier relying upon it.

The Fourth Circuit has stated that if the question is solely one of law, a district court does not need to refer matters to the ICC. *Montgomery Ward and Co. v. Roy Stone Transfer Corp.*, 329 F.2d 172, 174 (4th Cir.1964) (citing *Great Northern Ry. Co. v. Merchants Elevator Co.*, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922)). Several courts have recently addressed the issue of contract or common carriage without referral to the ICC. *See, e.g., Covey v. ConAgra, Inc.*, 788 F.Supp. 1160 (D.Colo. 1992); *Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc.*, 761 F.Supp. 194 (D.Mass.1991). I see no need to deviate from this course.

■ The determination of whether or not a tariff was duly filed and adopted is also a question of law which does not require referral to the ICC. Furthermore, the normal function of primary jurisdiction, to make available to the district court the expertise of the administrative agency and to ensure uniformity, would not be served in this case as the ICC has spoken directly to the issue under consideration in a recent decision, *Jasper Wyman & Son*, 8 I.C.C.2d 246 (1992). No further guidance would result from a referral of this issue. Therefore, I will deny the motion for stay and referral.

*The Motions for Summary Judgment*

Federal Rule of Civil Procedure 56 provides that the court may grant judgment as a matter of law if there is no genuine dispute of material fact, and the movant is entitled to a judgment as a matter of law. *Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972 (4th Cir.1990). The court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). A party moving for summary judgment is entitled to judgment as a matter of law if the party opposing the motion has failed to make a sufficient showing of an essential element of his case on which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). I will first address Golden West's motion and then FP's motion.

■ Golden West's first argument is that FP transported its goods not as a common carrier but as a contract carrier and that, therefore, FP's tariff rates do not apply.

A contract carrier is defined by the Interstate Commerce Act as "a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—(i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or (ii) designed to meet the distinct needs of each such person." 49

U.S.C. § 10102(15)(B). At issue in this case is whether there was a "continuing agreement" that met the "distinct needs" of the shipper. The "continuing agreement" requirement was further defined by regulation:

No contract carrier by motor vehicle, as defined in 49 U.S.C. § 10102(15) shall transport property for hire in interstate or foreign commerce except under special and individual contracts or agreements which shall be in writing, shall provide for transportation for a particular shipper or shippers, shall be bilateral and impose specific obligations upon both carrier and shipper or shippers, shall cover a series of shipments during a stated time in contrast to contracts of carriage governing individual shipments, and copies of which contracts or agreements shall be preserved by the carriers parties thereto so long as such contracts are in force and for at least one year thereafter.

49 C.F.R. § 1053.1 (1991), *removed,* 57 Fed. Reg. 21,616 (1992). The ICC removed 49 C.F.R. Part 1053 effective June 20, 1992. *See Contracts for Transportation of Property,* 8 I.C.C.2d 520 (1992). Nevertheless, I must apply Part 1053 to the case before me because it was in effect at the time when the contract was signed and the shipments occurred. *See, e.g., Covey, supra,* 788 F.Supp. at 1162 n. 1.

Although there was some question regarding if a written contract was ever executed in this transaction, Golden West has submitted unrebutted affidavits that attest that the partially executed documents submitted as exhibits were later fully executed. Therefore, a formal written contract did exist.

Golden West's argument for contract carriage, however, must fail because FP's contract was not designed to met the "distinct needs" of Golden West. As the D.C. Circuit has stated: "The call for 'distinct needs' sharply reduces the sphere of contract carriage. A distinct need, the Supreme Court has said, is a need 'for a different or a more select or a more specialized service' than common carriage provides." *Global Van Lines, Inc. v. ICC,* 804 F.2d 1293, 1301 (D.C.Cir.1986) (quoting *ICC v. J–T Transp. Co.,* 368 U.S. 81, 91, 82 S.Ct. 204, 210, 7 L.Ed.2d 147 (1961)). The items that Golden West contends were designed to meet its distinct needs, such as refrigerated trucks and prompt pick-up and delivery, do not rise to the level of constituting "distinct needs." Therefore, Golden West's argument that contract carriage occurred fails.

Golden West's second argument is that FP failed to have a valid tariff on file with the ICC at the time of the shipments. Golden West's argument centers on 49 C.F.R. § 1312.4(d) (1991), which states in relevant part: "[A] carrier may not participate in a tariff issued in the name of another carrier or an agent unless a power of attorney or concurrence has been executed. Absent effective concurrences or powers of attorney, tariffs are void as a matter of law." This regulation took effect October 31, 1984. *See Revision of Tariff Regulations,* 49 Fed.Reg. 38,614 (1984). The tariff submitted by FP as the basis for this action originally was issued by FP on January 28, 1985 with a stated effective date of February 14, 1985. Various amendments have followed but do not affect the issues in this case.

Golden West asserts that FP's tariff relied on a mileage guide of another carrier or agent to calculate its charges and FP failed to execute a power of attorney or concurrence concerning the mileage guide. Therefore, Golden West concludes that FP's tariffs are void in accordance with § 1312.4(d). FP contends that a mileage guide is not a tariff and that § 1312.4(d) is inapplicable.

The question, therefore, is whether or not a mileage guide is itself a "tariff" covered by the regulation. The ICC has determined that a mileage guide is a tariff covered by § 1312.4(d). *See Jasper Wyman, supra.* I must defer to an agency's interpretation of its governing statute and regulations if that interpretation is reasonable. *Monger v. Bowen,* 817 F.2d 15, 18 (4th Cir.1987). The Fifth Circuit in a recent published opinion, *Freightcor Services, Inc. v. Vitro Packaging, Inc.,* 969 F.2d 1563 (5th Cir.1992), decided that the ICC's

interpretation is reasonable and I find that their conclusion is sound.[1] Even without these decisions, FP's current urging that a mileage guide is not a tariff is undercut by FP's designation of the mileage guide as a tariff within its own tariff. *See* ICC FPSC 200–A, Item 100 (making reference to a governing publication as a "Mileage Guide Tariff").

 In response, FP argues that the decision of the Supreme Court in *ICC v. American Trucking Associations, Inc.,* 467 U.S. 354, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984), generally prevents the ICC from nullifying effective tariffs retroactively and, therefore, § 1312.4(d) cannot be used to prevent the application of the rates contained in FP's tariff.[2] Although FP's statement of the law is correct, its application of that law to the facts in this case is misplaced for two reasons. First, FP filed its tariff several months *after* § 1312.4(d) became effective. Therefore, there is no problem with retroactivity in this case. Second, because FP failed to execute a power of attorney or concurrence regarding the mileage guide, its tariff is void. The tariff was never effective. *See Jasper Wyman, supra.* Therefore, as the tariff was never effective, *American Trucking* is inapplicable.

FP next argues, in the alternative, that even if § 1312.4(d) voids reference to another carrier or agent's distance guide, that FP's tariff is still in substantial compliance and is fully enforceable. This argument misreads the language of § 1312.4(d). The regulation's stated consequence for failing to execute a power of attorney or concurrence is that "tariffs are void as a matter of law." It is not merely the reference to the tariff of another agent or carrier that is void, but FP's entire tariff. *See Jasper Wyman, supra.* Particularly in this case, this outcome is logical—without the external reference to determine distances, it is impossible to determine from FP's tariff what legal rate applies to a shipment based on distance rates. Such a result demonstrates that this situation is not a simple "irregularity in tariff filing" as FP contends.

As the tariff submitted in evidence by FP was not valid at the time of the shipments, I will grant Golden West's motion for summary judgment and deny FP's motion for summary judgment.

---

1. The decision that a distance guide is a tariff also undercuts another distinction that FP tries to draw between § 1312.4(d) and 49 C.F.R. § 1312.30(c), which concerns the determination of distances. Under § 1312.30(c), FP correctly notes that one allowable method for determining distances is "referring" to a distance guide, the same method followed in its tariff. FP then argues that "referring" to a distance guide bears no relationship to § 1312.4(d)'s requirement to "participate" in a tariff. Having determined that a distance guide is a tariff, however, makes it clear that "referring" to a distance guide also requires participation by virtue of 49 C.F.R. 1312.27(e), which states in relevant part that "carriers participating in tariffs which refer to, and are governed by, separate tariffs ... shall also participate in those governing separate tariffs."

2. In *Freightcor, supra,* the Fifth Circuit did not take a clear position on the applicability of *American Trucking.* At one point, the court stated that § 1312.4(d) "defines when a tariff became effective or becomes void through the action or inaction of a carrier," *Freightcor,* 969 F.2d at 1570. If the regulation prevents a tariff from becoming effective, it is unclear why the court proceeded to apply the two-part test from *American Trucking,* a test that examines if the ICC is allowed to reject *effective* tariffs retroactively. As I believe that the tariff in the case before me never became effective, the *American Trucking* test is inapplicable. Counsel for FP has pointed out that in justifying § 1312.4(d) under *American Trucking,* the Fifth Circuit in *Freightcor* cited portions of the Interstate Commerce Act involving primarily railway operations, *see* 969 F.2d at 1570 (citing 49 U.S.C. § 10762(b)(2)), whereas the case before me involves a motor carrier governed by different portions of the statute. As I am not applying *American Trucking* to the case before me, such a distinction is immaterial.