**GREYHOUND CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants,

Carolina Scenic Stages, Intervenor-Defendant.

Civ. A. No. 62 C 983.

United States District Court
N. D. Illinois, E. D.

Sept. 11, 1963.

Robert J. Bernard and Peter K. Nevitt, Edmund J. Kenny, Chicago, Ill.; Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel, for plaintiff Greyhound Corp.

Robert W. Ginnane, Gen. Counsel, and H. Neil Garson, Associate Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Lee Loevinger, Asst. Atty. Gen., and John H. D. Wigger, Dept. of Justice, Washington, D. C., and James P. O'Brien, U. S. Atty. for the Northern District of Illinois, Chicago, Ill., for defendant United States.

Joseph M. Scanlan, Chicago, Ill., and Wilmer A. Hill, Washington, D. C.; Ames, Hill & Ames, Washington, D. C., of counsel, for intervenor-defendant Carolina Scenic Stages.

Before KILEY, Circuit Judge, LA BUY, Senior District Judge, and WILL, District Judge.

WILL, District Judge.

In this action under Title 28 U.S.C. §§ 1336, 2284 and 2321–2325, Greyhound challenges the validity of two orders of the Commission, dated August 31, 1961, and January 12, 1962, under which Carolina is authorized to operate regular direct service over an alternate route between Columbia and Orangeburg, South Carolina. The orders in question were issued by the Commission under section (c)(8)(i) of what are known as its Deviation Rules, 49 C.F.R. §§ 211.1 et seq.

Prior to October, 1960, Carolina operated no direct or through service between Columbia and Orangeburg. It operated a through route from Columbia to Charleston, South Carolina, and a connecting shuttle service in combination with its wholly owned subsidiary, Coastal Stages Corporation, from Creston, a point on the Columbia-Charleston route, to Orangeburg. Its running time between Columbia and Orangeburg over this route varied between one hour and twenty-three minutes and one hour and thirty-five minutes.

In October, 1960, Greyhound operated a direct service between Columbia and Orangeburg with running times between fifty-nine minutes and one hour and fifteen minutes.

All of the foregoing services were operated pursuant to certification by the Commission.

On October 10, 1960, Carolina filed with the Commission notice of a proposed route deviation, advising that it intended to use Interstate Highway 26 (a new superhighway) between Columbia and Orangeburg as an alternate to its certificated route which alternate route would save 17 miles, and 27 minutes, on the run. Greyhound filed a protest with the Commission on November 22, 1960.

On January 11, 1961, Carolina started operating on the alternate route. On March 17, 1961, Division 1 of the Commission entered an order denying the proposed deviation on the ground that it failed to meet the requirements of the Deviation Rules. Carolina then filed a petition for reconsideration to which Greyhound also objected.

The Commission, by order of August 31, 1961, approved the use by Carolina of the alternate route. Greyhound petitioned for reconsideration which petition was denied on January 12, 1962, as follows:

" * * * (1) the order of August 31, 1961, was entered in accordance with law after it appeared (a) that the order of March 17, 1961, by the Commission, Division 1, rejecting applicant's Deviation Notice No. 3,

should be vacated and set aside, and (b) that the operations proposed by applicant in Deviation Notice No. 3 meet the provisions of the Commission's Deviation Rules, revised 1957, and that such proposed operations lawfully may be conducted; and (2) no sufficient cause appears for reconsidering or vacating the order of August 31, 1961, or for granting any of the other relief sought; * * *."

Thereafter, Greyhound brought this suit to set aside and enjoin the orders in question.

The Commission's Deviation Rules and Regulations, 49 C.F.R. §§ 211.1 et seq., were promulgated under its general rule making power, section 204(a) (6) of the Interstate Commerce Act, 49 U.S.C. § 304(a) (6), to implement the provisions of section 208(b) of the Motor Carrier Act, 49 U.S.C. § 308(b), which provides:

"A common carrier by motor vehicle operating under any such certificate may occasionally deviate from the route over which, and/or the fixed termini between which, it is authorized to operate under the certificate, under such general or special rules and regulations as the Commission may prescribe."

We are here concerned only with that portion of the Deviation Rules relating to alternate routes which provides:

"(c) Authority for deviations by motor carriers from operating authorities in described circumstances * * *

(1) – (7) * * *
* * * * * *

(8) *Alternate routes for operating convenience only.* Where a regular motor carrier is authorized to operate over a regular service route and there is wholly within the United States another highway which extends in the same general direction as such regular service route and affords a reasonably direct and practicable route between any two points on such regular service route, it may,

subject to the general conditions and requirements set forth in paragraph (d) of this section, use such other highway as an alternate route for operating convenience only with no service at any intermediate point thereon, and with no service at the termini except as otherwise authorized, in the manner and to the extent, as follows:

(i) Superhighways as alternate routes * * * *Provided*, That the use of the alternate route will not materially change the competitive situation between such carrier and any other."

Greyhound contends that the provisions of the Deviation Rules authorizing the Commission to approve alternate routes as deviations without requiring a finding of public convenience and necessity are invalid and beyond the Commission's powers under section 208(b) of the Motor Carrier Act previously quoted.

It also challenges the orders of August 31, 1961, and January 12, 1962, on the ground that, even if the provisions of the Deviation Rules authorizing the Commission to approve alternate routes are valid, the orders in question are unsupported by any findings that the use of the alternate route by Carolina will not materially change the competitive situation between it and any other carrier. In this connection Greyhound asserts that no hearing on the proposed alternate route was held, no evidence was received on its competitive effect and the Commission, therefore, acted contrary to its Deviation Rules in issuing the challenged orders.

The Commission asserts that authorizing alternate routes is a valid exercise of its power under section 208(b) of the Motor Carrier Act to approve deviations, that its orders of August 31, 1961, and January 12, 1962, are proper and, finally, that Commission orders permitting a regular certificated motor carrier to use a newly constructed superhighway as an alternate regular service route to its certificated route are not subject to judicial review.

We will consider first the question of whether the two orders are subject to judicial review. It is well settled, of course, that not all administrative orders are subject to judicial review, but the categories of non-reviewable orders are relatively limited. Where Congress has expressly conferred ultimate discretion on the executive, the determination is not subject to judicial review. See, e. g., United States v. George S. Bush & Co., 310 U.S. 371, 60 S.Ct. 944, 84 L.Ed. 1259 (1940) in which the President's power to adjust tariffs under the Flexible Tariff Act of 1930 was held not subject to judicial review. This principle is recognized specifically in section 10 of the Administrative Procedure Act, 5 U.S.C. § 1009.

But we find no such absolute or exclusive discretion conferred upon the Commission by section 208(b) of the Motor Carrier Act. On the contrary, there appears to be no reason why any rules and regulations promulgated under section 208(b) and any orders issued under such rules should not be subject to judicial review unless they fall within what the Supreme Court has termed "abstract declarations" not determining rights or obligations and from which no legal consequences will flow. Pennsylvania R. Co. v. United States, 363 U.S. 202, 205, 80 S.Ct. 1131, 4 L.Ed.2d 1165 (1960).

Greyhound here challenges the validity of the Commission's Deviation Rules themselves to the extent that they authorize the approval of regular alternate routes as deviations. The question of whether rules promulgated by the Commission are valid is clearly a matter for judicial review. American Trucking Ass'ns, Inc. v. United States, 101 F.Supp. 710, 724 (N.D. Ala.1951), aff'd., 344 U. S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953). In addition, Greyhound challenges two orders which clearly give Carolina a right, though terminable, which it did not have before and which Greyhound asserts adversely affects its rights. These are not mere abstract declarations and we can perceive no reason why such orders should be less subject to judicial re-

view than ones determining rates or rights to certification.

■ We come then to the questions of whether the orders are valid under the Deviation Rules and whether those Rules, to the extent that they authorize the Commission to approve regular alternate routes, are, themselves, a proper exercise of the Commission's powers under section 208(b) of the Motor Carrier Act.

As to the question of whether section (c)(8) of the Deviation Rules 49 C.F.R. § 211.1(c)(8), is within the Commission's powers under section 208(b), the plaintiff contends that the statute by its terms is limited to occasional deviations from regular certificated routes and terminals made necessary by road repairs or detours and does not authorize the Commission to approve regular alternate routes as deviations. Such an alternate route, the plaintiff argues, may, and in the instant case does, constitute the authorization of a basically new service without the requisite showing of convenience and necessity.

The defendants, on the other hand, assert that the Commission has broad regulatory powers to enable it to effectuate the National Transportation Policy enunciated in the Transportation Act of 1940. They further point out that the construction of the national system of interstate and defense highways and their efficient utilization by motor carriers compels a procedure for authorizing their use as alternate routes by certificated carriers without the necessity for extended formal proceedings. Accordingly, they contend that the Deviation Rules, including those portions relating to alternate routes, constitute a reasonable and valid exercise of the Commission's regulatory authority either under section 208(b) or under the Commission's general rule making powers.

It is well settled that an administrative agency does not have carte blanche to adopt any rule it may fancy, but rather that its regulations must be consistent with the purposes of the statute and reasonably adapted to carry out those pur-poses. United States v. Resler, 313 U.S. 57, 61 S.Ct. 820, 85 L.Ed. 1185 (1941); Stearn v. United States, 87 F.Supp. 596 (W.D.Va.1949). On the other hand, it is equally well settled that the Commission has the power to adopt regulations to carry out the policies of the laws which it administers if such regulations have a reasonable and rational basis, even though no specific authority to promulgate regulations on the subject is contained in the statute. American Trucking Ass'ns, Inc. v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953); United States v. Pennsylvania R. Co., 323 U.S. 612, 65 S.Ct. 471, 89 L.Ed. 499 (1945); United States v. Resler, supra; Assigned Car Cases, 274 U.S. 564, 47 S.Ct. 727, 71 L.Ed. 1204 (1947); Interstate Commerce Commission v. Goodrich Transit Co., 224 U.S. 194, 32 S.Ct. 436, 56 L.Ed. 729 (1912).

We agree with the plaintiff that the authority conferred upon the Commission by section 208(b) of the Motor Carrier Act to permit a carrier "occasionally" to deviate from a certificated route or terminal hardly can be construed to authorize a regulation governing the designation of a regular alternate route which may, as it has in the instant case, become the carrier's principal route between the cities in question. But we deem the provisions of section 211.1(c) (8) to be consistent with the purposes of the Motor Carrier Act, reasonably adapted to carry out those purposes, and therefore within the Commission's general rule making powers.

It must be noted, first, that the regulation applies only to a motor carrier previously certificated, after a finding of convenience and necessity, to serve the cities in question. The regulation spells out a number of criteria which the applicant for an alternate route must satisfy including (1) that it will continue to furnish reasonable and adequate service from and to all authorized points on its regular service route, (2) that it will not serve any intermediate point or points on the alternate route, (3) that use of the alternate route will not enable it to

render a materially different service than that rendered over its certificated route or enable it to engage in transportation between points not practicable to service over its certificated route, and (4) that use of the alternate route will not materially change the competitive situation between it and any other carrier.

If the Commission after appropriate investigation determines the facts with respect to these criteria as contemplated by the regulation, there is no reason for redetermination of all the numerous elements required in the initial certification. The procedure for receiving evidence and ascertaining the facts, whether by hearing, affidavits or otherwise, is a matter for the sound administrative discretion of the Commission so long as some reasonable procedure is adopted. Riss & Co. v. United States, 117 F.Supp. 296 (W.D.Mo.1952), aff'd. mem., 346 U.S. 890, 74 S.Ct. 221, 98 L.Ed. 393 (1953).

In the instant case, however, the Commission received no evidence and made no findings with respect to any of these criteria. There is, accordingly, no possible basis for ascertaining whether or not the order authorizing Carolina to use the alternate route is supported by facts establishing that the reasonable standards prescribed by the regulations have been met. We recognize that in reviewing a Commission order we may not substitute our evaluation of the evidence for that of the Commission. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934). But so far as the record before us reveals, the Commission made no specific determination that any of the criteria which it established had been met. It merely found generally that the requirements of the Deviation Rules had been satisfied. Neither the parties nor a reviewing court can determine whether such an order has a rational basis in fact.

Both common sense and fair play require that the ground upon which an administrative agency acts be clearly disclosed and adequately sustained. Schaffer Transp. Co. v. United States, 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.2d 117 (1957); Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943); Clarke v. United States, 101 F.Supp. 587 (D.D.C.1951).

We conclude, therefore, that the orders of August 31, 1961, and January 12, 1962, are not supported by the requisite findings of fact and must be vacated and set aside. The case is remanded to the Commission for further proceedings consistent herewith.